# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

DANIELLE HARKINS,

      Plaintiff,                         CASE NO.:

    v.                             JURY TRIAL DEMANDED

HILLSTONE RESTAURANT
GROUP, INC.,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DANIELLE HARKINS ("Plaintiff" and/or "Ms. Harkins"), by and through her undersigned counsel, hereby complains of Defendant, HILLSTONE RESTAURANT GROUP, INC. ("Defendant" and/or "Hillstone"), and alleges as follows:

## INTRODUCTION

1.    This case involves a female employee who was unlawfully discriminated and retaliated against by her employer on the basis of her sex and pregnancy after returning from maternity leave.

2.    Ms. Harkins brings this action against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg ("PWFA"), the Providing Urgent Maternal Protections for Nursing Mothers Act, 29 U.S.C § 218d ("PUMP" and/or "PUMP Act"); the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes ("FCRA"); and the Miami-Dade County Human Rights Ordinance, Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A ("MDHRO").

1

## PARTIES

3.      Ms. Harkins is an individual female residing in the State of Florida.

4.      Defendant  HILLSTONE  RESTAURANT  GROUP,  INC.  ("Defendant"  and/or
"Defendant Hillstone"), is a Delaware Corporation with its principal place of business located at
2710 E. Camelback Rd., Ste 200, Phoenix, Arizona, 85016.

5.      At all times material, Defendant maintained a restaurant located at 201 Miracle
Mile, Coral Gables, FL 33134 ("Coral Gables location")

6.      At all times material, Ms. Harkins was employed by Defendant at its Coral Gables
Location.

7.      The exact number of Defendant's employees is unknown, but upon information and
belief, there are well more than the statutory minimum under Title VII, the PUMP Act, the PWFA,
the FCRA, and the MDHRO.

8.      At all times material, Defendant was an "employer" within the meaning of 42
U.S.C. § 2000e(b).

9.      At all times material, Plaintiff was an "employee" of Defendant within the meaning
of 42 U.S.C. § 2000e(f).

10.     Defendant was an "employer" within the meaning of 29 U.S.C. § 203(d).

11.     Plaintiff was an "employee" of Defendant, as the term "employee" is defined by 29
U.S.C. § 203(e)(1).

12.     At all times material, Defendant was a "covered entity" within the meaning of 42
U.S.C. § 2000gg(2).

13.     At all times material, Plaintiff was an "employee" within the meaning of 42 U.S.C.
§ 2000gg(3), and a "qualified employee" within the meaning of 42 U.S.C. § 2000gg(6).

14.     At all times material, Defendant was a "person" within the meaning of § 760.02(6), Florida Statutes, and an "employer" within the meaning of § 760.02(7), Florida Statutes.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f), 42 U.S.C. § 2000gg-2(a), and 29 U.S.C. § 218d.

16.     Venue is proper in this district pursuant to 28 U.S.C. §1391 because the events giving rise to this action occurred within the jurisdiction of the United States District Court for the Southern District of Florida.

17.     At all times relevant, up to and including the present day, Defendant maintains its Coral Gables location in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PREREQUISITES

18.     Ms. Harkins has complied with all administrative requirements to file this action.

19.     On or around December 19, 2023, Ms. Harkins timely dual-filed a charge of discrimination (Charge No. 510-2024-02532) against Defendant with the Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR").

20.     On or around September 11, 2024, the EEOC issued Ms. Harkins' Notice of Right to Sue against Defendant.

21.     Ms. Harkins is timely commencing this action within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

3

22.     On or around September 23, 2024, the MDCHR issued Ms. Harkins' Notice of Right to Sue against Defendant.

23.     Ms. Harkins is timely commencing this action within ninety (90) days of receipt of the MDCHR's Notice of Right to Sue.

## **FACTUAL ALLEGATIONS**

24.     At all times material, Ms. Harkins was an individual female and is therefore a protected class member.

25.     In or around September of 2019, Defendant hired Ms. Harkins as a Server/Bartender.

26.     At all relevant times, Ms. Harkins was considered an exemplary employee.

27.     Throughout her employment for Defendant, which spanned approximately four and a half (4.5) years, Ms. Harkins had a record of positive performance.

28.     In or around late 2022, Ms. Harkins became pregnant.

29.     Ms. Harkins took maternity leave in or around April of 2023 after giving birth to her daughter.

30.     In or around July of 2023, Ms. Harkins returned to work after completing her maternity leave.

31.     After returning to work following her maternity leave, Defendant, by and through its management and employees, subjected Ms. Harkins to discriminatory treatment and retaliation on the basis of her sex and pregnancy.

32.     Defendant's discriminatory and retaliatory conduct was severe, pervasive, and included, but was not limited to the following: forcing Ms. Harkins to express breastmilk[1] in a

---

[1] Expressing breastmilk is commonly referred to as "pumping," and these terms will be used interchangeably throughout this Complaint.

storage cell (hereinafter "pump space") that was not functional for pumping, not shielded from view, and not free from intrusion from her coworkers; denying Ms. Harkins' request for an accommodation to pump in a sanitary space that was free from intrusion; and failing to reasonably accommodate Ms. Harkins' pregnancy-related requests, including the failure to provide Ms. Harkins privacy to pump at work or even a chair or table to use while pumping. Defendant additionally sexually harassed and humiliated Ms. Harkins by directing its employees to enter the pump space while Ms. Harkins was pumping, and her breasts were exposed. Defendant further retaliated against Ms. Harkins by terminating her employment following her repeated complaints and reports of discrimination, harassment, and unlawful conduct to her managers.

### DEFENDANT HILLSTONE FAILED TO PROVIDE PLAINTIFF WITH URGENT MATERNAL PROTECTIONS

33.     Ms. Harkins began experiencing severe and pervasive discriminatory conduct on or around July 14, 2023, when she returned to work for Defendant at the conclusion of her maternity leave, roughly 10 weeks after giving birth.

34.     Upon return from maternity leave, Ms. Harkins requested the ability to take periodic breaks during her shift to pump, which was granted.

35.     However, Defendant designated Ms. Harkins to take her pump breaks in a storage unit upstairs that was not (1) functional for pumping, (2) shielded from view, or (3) free from intrusion.

36.     Defendant's storage unit, which doubled as a pump space, was riddled with mold, old paint cans, bugs, dead cockroaches, electrical wiring, restaurant supplies, sewage pipes, was enclosed by a wire fence, and could not be locked from the inside by Ms. Harkins.






37. Defendant did not provide Ms. Harkins with a table or chair in the pump space, so she held her equipment while sitting on the dirty floor.

38. Further, Ms. Harkins could not stand up while pumping in the pump space because the sewage pipes ran overhead, limiting her ability to stand.

39. Ms. Harkins held her pump equipment to avoid contaminating the milk, which she fed to her newborn daughter, from the mold and filth in the pump space.

40. Defendant's pump space additionally could not be locked by Ms. Harkins, so she could not prevent anybody from intruding while she was inside.

41. Defendant's pump space was not shielded from view, so Ms. Harkins was visible by any of Defendant's employees who accessed the storage room while she was in there.

42. Upon Defendant's employees entering the pump space, they would see Ms. Harkins, sitting on the dirty floor with her breasts exposed.

43. The pump space was a small, rectangular hallway with an eerie bright light overhead, illuminating the room.

44. Ms. Harkins was conditioned to sit with her back facing the entrance, peaking over her shoulder to the front door, out of fear that somebody would walk in on her.

## DEFENDANT HILLSTONE SEXUALLY HARASSED PLAINTIFF, VIOLATED HER PRIVACY AND DIGNITY, AND DISREGARDED HER COMPLAINTS

45. Defendant's designated pump space was not free from view or intrusion.

46. Defendant's employees had access to the pump space while Ms. Harkins was inside.

47. In fact, on numerous occasions, Defendant's supervisors and managers instructed their employees to enter the room while Ms. Harkins was occupying it because Defendant simultaneously used this room for storing restaurant equipment.

48.     On or around July 17, 2023, a coworker clocked Ms. Harkins out of her shift while Ms. Harkins was on a pump break.

49.     Defendant unlawfully halted Ms. Harkins' wages while she was pumping, so she reported this to her manager.

50.     This was the first instance of misconduct with one of Defendant's employees regarding Ms. Harkins' pumping at work and was immediately brought to the attention of Defendant's managers.

51.     Ms. Harkins further requested accommodations for her pump breaks such as a chair to sit in and a table to rest the pump equipment on.

52.     These accommodation requests were made directly to Andrea Fassi ("Ms. Fassi"), employed by Defendant as General Manager for the Coral Gables location, yet Defendant failed to provide any accommodations.

53.     In or around the end of July to mid-September of 2023, Plaintiff became paranoid that somebody would walk in on her while pumping. To be clear, Plaintiff was very vulnerable when pumping as she was half-naked while sitting on the floor.

54.     On or around September 21, 2023, John Horowitz ("Mr. Horowitz"), employed by Defendant as Manager at the Coral Gables location, proceeded to walk into the pump space while Ms. Harkins was pumping. Ms. Harkins, exposed, vulnerable and afraid, screamed, "Hey! Hey! you need to turn around, you can't be up here!" Mr. Horowitz immediately understood he was somewhere he should not have been, apologized, and exited the room.

55.     This unexpected encounter made Ms. Harkins even more nervous and anxious when having to go into the pump space to pump.

56.     Ms. Harkins became frustrated when her supervisors and coworkers continued to intrude on her pumping.

57.     Ms. Harkins mentioned Mr. Horowitz's violation of her privacy to her floor managers, Annette [Last Name Unknown] ("Annette") and Lexie [Last Name Unknown].

58.     In or around early October 2023, Ms. Harkins worked a double shift, meaning she took an additional pump break during the workday. Ms. Harkins' morning pump break concluded with an individual, employed by Defendant as a maintenance technician, walking into the room as she was getting dressed. Again, Ms. Harkins was extremely humiliated and embarrassed, and grew frustrated that Defendant was not providing her any privacy.

59.     Ms. Harkins was shocked that Ms. Fassi and her other managers did not stop employees from entering the pump space while she was there.

60.     Again, in or around early October 2023, Ms. Harkins was pumping in the space around lunch time. Laurie [Last Name Unknown], employed by Defendant, walked into the pump space while Ms. Harkins was bare and exposed, again humiliating and embarrassing Ms. Harkins. Ms. Harkins later asked Laurie why she went into the pump space while, and Laurie explained that she was instructed to grab a water pitcher.

61.     Ms. Harkins reported Laurie's intrusion to Valentina Garcia ("Ms. Garcia"), employed by Defendant as Assistant General Manager at the Coral Gables location, to which Ms. Garcia nonchalantly responded that Laurie was simply assigned to grab restaurant equipment. Ms. Garcia did not believe it was of any importance that Ms. Harkins was pumping in the space, and no meaningful corrective action was taken.

62.     There were no further instructions to Defendant's employees to avoid the pump space while Ms. Harkins was pumping on her approved breaks.

63.     On another occasion, in or around mid-October 2023, a kitchen staff member Roseman [Last/First Name Unknown] walked into the pump space while Ms. Harkins was pumping.

64.     This was now the fourth instance of Ms. Harkins' colleague entering the pump space while she was pumping. Ms. Harkins screamed and shouted at Roseman with the hopes he would turn around and exit the room. Roseman ultimately left the room, however his presence came at the expense of Ms. Harkins being embarrassed and humiliated.

65.     Ms. Harkins repeatedly expressed her extreme discomfort and highlighted the lack of privacy to her managers by explaining she physically had to look over her shoulder while pumping on a dirty floor to prevent unwelcome intruders from seeing her exposed breasts.

66.     To be clear, Ms. Harkins became anxious and paranoid to go on her pump breaks as a result of Defendant's employees repeatedly walking into the room while she was exposed and vulnerable.

67.     Despite Ms. Harkins reporting her anxiety and paranoia to Defendant's managers and agents, Defendant failed to take any corrective action, merely urging Ms. Harkins to continue pumping in the assigned space.

68.     On or around early November 2023, Ms. Harkins again worked a double shift and took her first pump break around lunchtime.

69.     While Ms. Harkins was pumping, one of the dishwashers [Name Unknown] employed by Defendant was instructed by a head chef to deposit silverware up to the pump space. Importantly, this individual did not speak English.

70.     Ms. Harkins turned around while pumping and realized this man was standing one foot behind her. Panicked, she tried communicating to him that he needed to leave and could not be up there, but the man did not understand her plea.

71.     Ms. Harkins became increasingly more uncomfortable, so she shouted and screamed while gesturing to the man that he needed to leave immediately, but he again ignored her desperate attempt to be left alone.

72.     Ms. Harkins, mortified, shielded her naked breasts with one arm and held the pump equipment in the other, while the dishwasher stood still and watched her struggle to get dressed.

73.     What in reality took three (3) or four (4) minutes felt like an eternity for Ms. Harkins. Ms. Harkins' discomfort grew with each passing second as she became more frightened and fearful for what might happen to her.

74.     Fortunately, the dishwasher eventually put the silverware down and left, but Ms. Harkins was reminded of her discomfort and fear each time she saw him.

75.     Ms. Harkins rushed to Annette to report what had just happened. This report was Ms. Harkins' fifth (5) official report to a manager of a colleague walking in on her while pumping. Again, Ms. Harkins explicitly stated how uncomfortable she was to pump in the space due to Defendant's failure to provide adequate accommodations despite her frequent requests and complaints.

76.     Finally, Defendant attempted to remedy this situation. Defendant gave Ms. Harkins a firewood holder to place in front of the door while she was pumping. Unsurprisingly, this did not deter or prevent Defendant's employees from entering the space, whatsoever, which Ms. Harkins reported.

77.     As a result, Ms. Harkins continued to host unwelcome intruders while she pumped.

11

## DEFENDANT HILLSTONE RETALIATED AGAINST PLAINTIFF
## FOR REPORTING SEXUAL HARASSMENT AND OTHER UNLAWFUL ACTIVITY

78.     Ms. Harkins asked Defendant for a meeting between herself, Annette, and Tarik El Bir ("Mr. El Bir"), employed by Defendant as Culinary Manager at its Coral Gables location, to speak about potential solutions.

79.     Ms. Harkins explained that she was very uncomfortable and extremely frustrated with what had transpired between the dishwasher and herself in the pump room. Ms. Harkins explained that she became fearful to pump while at work and developed anxiety and paranoia as a result of Defendant's misconduct.

80.     Mr. El Bir simply responded that he was entirely unaware Ms. Harkins was in the room when the individual was asked to transport the silverware. No meaningful solution followed this meeting.

81.     Not only was Ms. Harkins' need for privacy and cleanliness to express milk for her baby not properly accommodated, but the clear lack of communication between Defendant's management and employees demonstrated Defendant's failure to adequately address an issue that had been reported by Ms. Harkins more than five (5) times in three (3) months.

82.     On or around November 25, 2023, several days after the meeting between Ms. Harkins, Annette, and Mr. El Bir, Defendant informed Ms. Harkins that they did not believe she had a future with the company.

83.     As a result of Ms. Harkins' accommodation requests and complaints of unlawful activity, Defendant terminated Ms. Harkins' employment.

84.     Alternatively, on or around November 25, 2023, Defendant constructively terminated Ms. Harkins.

85.     Ms. Harkins had no choice but to resign as a result of Defendant forcing her to express milk for her baby in an unsanitary, unshielded, and unaccommodated space despite constant requests for a chair, table, and privacy.

86.     Defendant made the conditions so onerous, abusive, and intolerable for Ms. Harkins that no woman in Ms. Harkins' shoes would have been expected to continue working, such that Ms. Harkins' choice to resign was void of choice or free will. Because Ms. Harkins could not endure the immense anxiety, stress, and humiliation associated with working for Defendant, and Defendant continuously failed to take action following accommodation requests and direct reports of unlawful activity, Ms. Harkins was forced to resign.

87.     By the end of her employment with Defendant, Ms. Harkins had become so anxious to pump that she lost the ability to produce milk for her newborn daughter altogether. The inability to feed her daughter was not only detrimental to Ms. Harkins' mental health and physical well-being, but to her newborn daughter's overall health and development. To this day, Defendant's actions still impact Ms. Harkins and her daughter.

88.     Defendant unlawfully and wrongfully terminated Ms. Harkins, because of her sex and pregnancy, and in retaliation for repeated requests for reasonable accommodations and reporting unlawful activity to her managers.

89.     The events described above are just some of the examples of unlawful discrimination and retaliation that Defendant subjected Ms. Harkins to on a continuous and on-going basis throughout her employment.

90.     Defendant unlawfully discriminated against Ms. Harkins because of her sex and pregnancy.

91.     Defendant failed to reasonably accommodate Ms. Harkins' pregnancy-related accommodation requests as required by law.

92.     Defendant retaliated against Ms. Harkins for complaining about Defendant's failure to accommodate her and for complaining about Defendant's unlawful activity.

93.     Ms. Harkins claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

94.     At all times material, Defendant's managers and employees were acting as agents of Defendant in their unlawful treatment of Ms. Harkins.

95.     At all times material, Defendant acted with deliberate indifference to the unlawful treatment complained of herein.

96.     As a result of Defendant's actions, Ms. Harkins felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

97.     As a result of the acts and conduct complained herein, Ms. Harkins has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Ms. Harkins has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Ms. Harkins has further experienced severe emotional and physical distress.

98.     Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, so as to support and justify an award of punitive damages against Defendant.

99.     Defendant is either directly or vicariously liable for the unlawful conduct complained of herein.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 2000e-2
### *Sex Discrimination*

100.    Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

101.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

102.    Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

103.    Title VII defines "because of sex" and "on the basis of sex" to include discrimination on the basis of "pregnancy, childbirth, or related medical conditions" and requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k).

104.    Ms. Harkins was an individual female and was therefore a protected class member.

105.    Ms. Harkins gave birth to her newborn daughter in April of 2023 and returned to work from maternity leave in July of 2023, and was therefore a protected class member.

106.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

107.    Defendant subjected Ms. Harkins to discriminatory treatment on the basis of her sex, including but not limited to, forcing Ms. Harkins to express milk ("pump") in a storage cell

riddled with mold, garbage, bugs, dead cockroaches, open paint cans, electrical wiring, and sewage pipes, forcing Ms. Harkins to pump in a storage cell that was not functional for pumping, not shielded from view, and not free from intrusion, forcing Ms. Harkins to sit on the dirty floor while pumping because there was no space for a chair or table in the storage cell, ordering employees enter the storage cell while Ms. Harkins was pumping, exposed and vulnerable, ignoring Ms. Harkins complaints that Defendant's employees walked in on her half-naked, and unlawfully terminating Ms. Harkins' employment, or alternatively constructively terminating Ms. Harkins' employment.

108.     Defendant targeted Ms. Harkins because she was a woman who recently gave birth and returned from maternity leave. No similarly situated male or non-lactating employees endured the discriminatory conduct that Ms. Harkins was forced to endure.

109.     The discriminatory actions of the Defendant against Ms. Harkins, as described and set forth above, constitute an adverse employment action for the purposes of Title VII.   In subjecting Ms. Harkins to adverse employment actions, the Defendant intentionally discriminated against Ms. Harkins with respect to the compensation, terms, conditions, or privileges of her employment.

110.     As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of Title VII, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harkins accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

111.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Harkins' rights under Title VII, warranting the imposition of punitive damages, in addition to compensatory damages.

112.    The conduct of the Defendant deprived Ms. Harkins of her statutory rights guaranteed under Title VII.

113.    Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT II**
**42 U.S.C. § 2000e-3**
*Hostile Work Environment*

114.    Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

115.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment.

116.    Ms. Harkins was an individual female and was therefore a protected class member.

117.    Ms. Harkins gave birth to her newborn daughter in April of 2023 and returned to work from maternity leave in July of 2023, and was therefore a protected class member.

118.    Defendant's sexual harassment and discrimination was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

119.    Defendant's severe and pervasive conduct included, but was not limited to forcing Ms. Harkins to express milk ("pump") in a storage cell riddled with mold, garbage, bugs, dead cockroaches, open paint cans, electrical wiring, and sewage pipes, forcing Ms. Harkins to pump in a storage cell that was not functional for pumping, not shielded from view, and not free from

intrusion, forcing Ms. Harkins to sit on the dirty floor while pumping because there was no space for a chair or table in the storage cell, and requesting employees enter the storage cell while Ms. Harkins was pumping, exposed and vulnerable. At times, Defendant's employees did not leave the room when Ms. Harkins asked them to, and they watched her struggle, half-naked, for several minutes.

120.    Defendant targeted Ms. Harkins because she was a female who had returned from maternity leave following the birth of her daughter. No similarly situated male or non-lactating employees endured the sexually harassing conduct that Ms. Harkins was forced to endure.

121.    The Defendant's sexual harassment was unwelcomed by Ms. Harkins, who had no choice but to endure the discriminatory treatment.

122.    The Defendant's treatment of Ms. Harkins was unwelcomed, yet Ms. Harkins had no choice but to endure the discriminatory treatment.

123.    The Defendant's discriminatory conduct was unwelcomed by Ms. Harkins, who had no choice but to endure the discriminatory treatment.

124.    The Defendant's sexual harassment and discrimination of Ms. Harkins negatively and significantly impacted Ms. Harkins' life. The Defendant's conduct made Ms. Harkins feel isolated, embarrassed, and ashamed.

125.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of Title VII, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harkins accordingly demands lost economic damages,

lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

126.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harkins' rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

127.   The conduct of Defendant deprived Ms. Harkins of her statutory rights guaranteed under Title VII.

128.   Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT III
### 42 U.S.C. § 2000e-3
### *Retaliation*

129.   Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

130.   Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

131.   Ms. Harkins was an individual female and was therefore a protected class member.

132.   Ms. Harkins gave birth to her newborn daughter in April of 2023 and returned to work from maternity leave in July of 2023, and was therefore a protected class member.

133.   Ms. Harkins engaged in a protected activity when she exercised her maternity leave benefits, returned to work following maternity leave with an ongoing request to express milk ("pump") while at work, and repeatedly complained about both the pump space Defendant designated Ms. Harkins to use as well as the frequent, unwelcomed intrusions by Defendant's employees while Ms. Harkins was pumping.

134.    In response to Ms. Harkins asserting her right to enjoy the same employment benefits as every other employee, the Defendant retaliated against Ms. Harkins.

135.    Defendant retaliated against Ms. Harkins by engaging in conduct, including but not limited to, denying Ms. Harkins' reasonable accommodation requests, forcing Ms. Harkins to continue pumping from the storage cell, continuing to assign employees to enter the pump space while Ms. Harkins was pumping, exposed and vulnerable, and unlawfully terminating Ms. Harkins' employment, or alternatively constructively terminating Ms. Harkins' employment.

136.    Defendant took the above-mentioned materially adverse actions, among others, against Ms. Harkins because of her protected activities.

137.    Any reasonable employee in Ms. Harkins' position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Harkins was forced to endure.

138.    Defendant's alleged bases for its adverse employment actions against Ms. Harkins are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

139.    As a direct and proximate result of the Defendant's retaliatory conduct in violation of the Title VII, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harkins accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

140.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harkins' rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

141.     The conduct of the Defendant deprived Ms. Harkins of her statutory rights guaranteed under Title VII.

142.     Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT IV**
**§ 760.10(1), Fla. Stat.**
*Sex Discrimination*

143.     Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

144.     The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's sex or pregnancy. § 760.10(1)(a), Fla. Stat.

145.     Ms. Harkins was an individual female and was therefore a protected class member.

146.     Ms. Harkins gave birth to her newborn daughter in April of 2023 and returned to work from maternity leave in July of 2023, and was therefore a protected class member.

147.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

148.     Defendant subjected Ms. Harkins to discriminatory treatment on the basis of her sex, including but not limited to, unlawfully terminating Ms. Harkins' employment.

149.     Defendant subjected Ms. Harkins to discriminatory treatment on the basis of her sex, including but not limited to, forcing Ms. Harkins to express milk ("pump") in a storage cell riddled with mold, garbage, bugs, dead cockroaches, open paint cans, electrical wiring, and sewage

pipes, forcing Ms. Harkins to pump in a storage cell that was not functional for pumping, not shielded from view, and not free from intrusion, forcing Ms. Harkins to sit on the dirty floor while pumping because there was no space for a chair or table in the storage cell, requesting employees enter the storage cell while Ms. Harkins was pumping, exposed and vulnerable, ignoring Ms. Harkins complaints that Defendant's employees walked in on her half-naked, and unlawfully terminating Ms. Harkins' employment, or alternatively constructively terminating Ms. Harkins' employment.

150.    Defendant targeted Ms. Harkins because she was a woman who recently gave birth and returned from maternity leave. No similarly situated male or non-lactating employees endured the discriminatory conduct that Ms. Harkins was forced to endure.

151.    The discriminatory actions of the Defendant against Ms. Harkins, as described and set forth above, constitute an adverse employment action for the purposes of FCRA.  In subjecting Ms. Harkins to adverse employment actions, the Defendant intentionally discriminated against Ms. Harkins with respect to the compensation, terms, conditions, or privileges of her employment.

152.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the FCRA, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harkins accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

153.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Harkins' rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

154.     The conduct of the Defendant deprived Ms. Harkins of her statutory rights guaranteed under the FCRA.

155.     Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT V
### § 760.10 (7), Fla. Stat.
### *Hostile Work Environment*

156.     Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

157.     The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's sex. § 760.10(1), Fla. Stat.

158.     Ms. Harkins was an individual female and was therefore a protected class member.

159.     Ms. Harkins gave birth to her newborn daughter in April of 2023 and returned to work from maternity leave in July of 2023, and was therefore a protected class member.

160.     Defendant's sexual harassment and discrimination was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

161.     Defendant's severe and pervasive conduct included, but was not limited to forcing Ms. Harkins to express milk ("pump") in a storage cell riddled with mold, garbage, bugs, dead cockroaches, open paint cans, electrical wiring, and sewage pipes, forcing Ms. Harkins to pump in a storage cell that was not functional for pumping, not shielded from view, and not free from intrusion, forcing Ms. Harkins to sit on the dirty floor while pumping because there was no space

for a chair or table in the storage cell, and requesting employees enter the storage cell while Ms. Harkins was pumping, exposed and vulnerable. At times, Defendant's employees did not leave the room when Ms. Harkins asked them to, and they watched her struggle, half-naked, for several minutes.

162.     Defendant targeted Ms. Harkins because she was a female who had returned from maternity leave following the birth of her daughter. No similarly situated male or non-lactating employees endured the sexually harassing conduct that Ms. Harkins was forced to endure.

163.     The Defendant's sexual harassment was unwelcomed by Ms. Harkins, who had no choice but to endure the discriminatory treatment.

164.     The Defendant's treatment of Ms. Harkins was similarly unwelcomed, yet Ms. Harkins had no choice but to endure the discriminatory treatment.

165.     The Defendant's discriminatory conduct was unwelcomed by Ms. Harkins, who had no choice but to endure the discriminatory treatment.

166.     The Defendant's sexual harassment and discrimination of Ms. Harkins negatively and significantly impacted Ms. Harkins' life. The Defendant's conduct made Ms. Harkins feel isolated, embarrassed, and ashamed.

167.     As a direct and proximate result of the Defendant's retaliatory conduct in violation of the FCRA, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harkins accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

168.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harkins' rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

169.    The conduct of the Defendant deprived Ms. Harkins of her statutory rights guaranteed under the FCRA.

170.    Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT VI**
**§ 760.10(7), Fla. Stat.**
*Retaliation*

171.    Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

172.    The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

173.    Ms. Harkins was an individual female and was therefore a protected class member.

174.    Ms. Harkins gave birth to her newborn daughter in April of 2023 and returned to work from maternity leave in July of 2023, and was therefore a protected class member.

175.    Ms. Harkins engaged in a protected activity when she exercised her maternity leave benefits, returned to work following maternity leave with an ongoing request to express milk ("pump") while at work, and repeatedly complained about both the pump space Defendant designated Ms. Harkins to use as well as the frequent, unwelcomed intrusions by Defendant's employees while Ms. Harkins was pumping.

176.    In response to Ms. Harkins asserting her right to enjoy the same employment benefits as every other employee, the Defendant retaliated against Ms. Harkins.

177.    Defendant retaliated against Ms. Harkins by engaging in conduct, including but not limited to, denying Ms. Harkins' reasonable accommodation requests, forcing Ms. Harkins to continue pumping from the storage cell, continuing to assign employees to enter the pump space while Ms. Harkins was pumping, exposed and vulnerable, and unlawfully terminating Ms. Harkins' employment, or alternatively constructively terminating Ms. Harkins' employment.

178.    Defendant took the above-mentioned materially adverse actions, among others, against Ms. Harkins because of her protected activities.

179.    Any reasonable employee in Ms. Harkins' position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Harkins was forced to endure.

180.    Defendant's alleged bases for its adverse employment actions against Ms. Harkins are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

181.    As a direct and proximate result of the Defendant's retaliatory conduct in violation of the FCRA, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harkins accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

182.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harkins' rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

183.    The conduct of the Defendant deprived Ms. Harkins of her statutory rights guaranteed under the FCRA.

184.    Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT VII**
**§ 11A-26(1), Code of Miami-Dade County**
***MDHRO Sex Discrimination***

185.    Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

186.    The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's sex and pregnancy, among others. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

187.    Ms. Harkins was an individual female and was therefore a protected class member.

188.    Ms. Harkins gave birth to her newborn daughter in April of 2023 and returned to work from maternity leave in July of 2023, and was therefore a protected class member.

189.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

190.    Defendant subjected Ms. Harkins to discriminatory treatment on the basis of her sex, including but not limited to, forcing Ms. Harkins to express milk ("pump") in a storage cell riddled with mold, garbage, bugs, dead cockroaches, open paint cans, electrical wiring, and sewage pipes, forcing Ms. Harkins to pump in a storage cell that was not functional for pumping, not shielded from view, and not free from intrusion, forcing Ms. Harkins to sit on the dirty floor while pumping because there was no space for a chair or table in the storage cell, requesting employees enter the storage cell while Ms. Harkins was pumping, exposed and vulnerable, ignoring Ms.

Harkins complaints that Defendant's employees walked in on her half-naked, unlawfully terminating Ms. Harkins' employment, and alternatively constructively terminating Ms. Harkins' employment.

191.    Defendant targeted Ms. Harkins because she was a woman who recently gave birth and returned from maternity leave. No similarly situated male or non-lactating employees endured the discriminatory conduct that Ms. Harkins was forced to endure.

192.    The discriminatory actions of Defendant against Ms. Harkins, as described and set forth above, constitute an adverse employment action for purposes of the MDHRO.  In subjecting Ms. Harkins to adverse employment actions, Defendant intentionally discriminated against Ms. Harkins with respect to the compensation, terms, conditions, or privileges of his employment.

193.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Harkins accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

194.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Harkins' rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

195.    The conduct of Defendant deprived Ms. Harkins of her statutory rights guaranteed under the MDHRO.

## COUNT VIII
### § 11A-26(1), Code of Miami-Dade County
### *Hostile Work Environment*

196.    Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

197.    The MDHRO prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's sex or pregnancy. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

198.    Ms. Harkins was an individual female and was therefore a protected class member.

199.    Ms. Harkins gave birth to her newborn daughter in April of 2023 and returned to work from maternity leave in July of 2023, and was therefore a protected class member.

200.    Defendant's sexual harassment and discrimination was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

201.    Defendant's severe and pervasive conduct included, but was not limited to forcing Ms. Harkins to express milk ("pump") in a storage cell riddled with mold, garbage, bugs, dead cockroaches, open paint cans, electrical wiring, and sewage pipes, forcing Ms. Harkins to pump in a storage cell that was not functional for pumping, not shielded from view, and not free from intrusion, forcing Ms. Harkins to sit on the dirty floor while pumping because there was no space for a chair or table in the storage cell, and requesting employees enter the storage cell while Ms. Harkins was pumping, exposed and vulnerable. At times, Defendant's employees did not leave the room when Ms. Harkins asked them to, and they watched her struggle, half-naked, for several minutes.

202.    Defendant targeted Ms. Harkins because she was a female who had returned from maternity leave following the birth of her daughter. No similarly situated male or non-lactating employees endured the sexually harassing conduct that Ms. Harkins was forced to endure.

203.    The Defendant's sexual harassment was unwelcomed by Ms. Harkins, who had no choice but to endure the discriminatory treatment.

204.    The Defendant's treatment of Ms. Harkins was similarly unwelcomed, yet Ms. Harkins had no choice but to endure the discriminatory treatment.

205.    The Defendant's discriminatory conduct was unwelcomed by Ms. Harkins, who had no choice but to endure the discriminatory treatment.

206.    The Defendant's sexual harassment and discrimination of Ms. Harkins negatively and significantly impacted Ms. Harkins' life. The Defendant's conduct made Ms. Harkins feel isolated, embarrassed, and ashamed.

207.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of MDHRO, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harkins accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

208.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harkins' rights under MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

209.    The conduct of Defendant deprived Ms. Harkins of her statutory rights guaranteed under MDHRO.

210.    Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT IX
### § 11A-43(1), Code of Miami-Dade County
### *Retaliation*

211.    Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

212.    The MDHRO prohibits retaliation in any manner against a person who has opposed an unlawful practice, has filed a complaint, or participated in any investigation, proceeding or hearing related to an unlawful practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–43(1).

213.    Ms. Harkins engaged in a protected activity when she exercised her maternity leave benefits, returned to work following maternity leave with an ongoing request to express milk ("pump") while at work, and repeatedly complained about both the pump space Defendant designated Ms. Harkins to use as well as the frequent, unwelcomed intrusions by Defendant's employees while Ms. Harkins was pumping.

214.    In response to Ms. Harkins asserting her right to enjoy the same employment benefits as every other employee, the Defendant retaliated against Ms. Harkins.

215.    Defendant retaliated against Ms. Harkins by engaging in conduct, including but not limited to, denying Ms. Harkins' reasonable accommodation requests, forcing Ms. Harkins to continue pumping from the storage cell, continuing to assign employees to enter the pump space while Ms. Harkins was pumping, exposed and vulnerable, and unlawfully terminating Ms. Harkins' employment, or alternatively constructively terminating Ms. Harkins' employment.

216.     Defendant took the above-mentioned materially adverse actions, among others, against Ms. Harkins because of her protected activities.

217.     Any reasonable employee in Ms. Harkins' position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Harkins was forced to endure.

218.     Defendant's alleged bases for its adverse employment actions against Ms. Harkins are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

219.     As a direct and proximate result of the Defendant's retaliatory conduct in violation of the Title VII, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harkins accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

220.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harkins' rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

221.     The conduct of the Defendant deprived Ms. Harkins of her statutory rights guaranteed under Title VII.

222.     Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT X**
**42 U.S.C. § 2000gg-1**
*PWFA Discrimination*

223.    Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

224.    The PWFA provides that it is unlawful for an employer to not make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless the employer can demonstrate that the accommodation would impose an undue hardship. 42 U.S.C. § 2000gg-1(1).

225.    It is also unlawful under the PWFA for an employer to require a qualified employee affected by pregnancy, childbirth, or related medical conditions to accept accommodations that were not arrived at through an interactive process, or to take leave when another reasonable accommodation could be provided. 42 U.S.C. §§ 2000gg-1(2), (4).

226.    The PWFA further provides that it is unlawful for an employer to deny employment opportunities, or to take an adverse action in the terms, conditions, or privileges of employment, against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee. 42 U.S.C. §§ 2000gg-1(3), (5).

227.    A known limitation under the PWFA includes any physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000gg(4).

228.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

229.    Ms. Harkins was a qualified employee and had known physical impairments and limitations related to her pregnancy, including but not limited to requiring breaks to express milk

33

up to three (3) times each and every day. Ms. Harkins could not perform work while pumping, and the failure to express milk would result in extreme pain and discomfort, causing fatigue, nausea, lightheadedness, difficulty standing, and an inability to perform heavy lifting. These conditions substantially limited her ability to perform major life activities such as standing, walking, and lifting.

230.    Ms. Harkins requested reasonable accommodations shifts due to her pregnancy-related medical condition including but not limited to, being provided a chair and table while she was pumping, a clean space to pump in, and privacy while pumping.

231.    Defendant failed to reasonably accommodate Ms. Harkins' pregnancy and pregnancy-related conditions and failed to engage in an interactive process regarding her accommodation requests.

232.    Defendant forced Ms. Harkins to accept accommodations without engaging in an interactive process and forced Ms. Harkins to continue pumping in the same storage cell and try to use a firewood holder as a means of locking the door, which was unsuccessful.

233.    Defendant further subjected Ms. Harkins to discriminatory treatment on the basis of her pregnancy, including but not limited to, denying Ms. Harkins the terms and conditions of employment afforded to other male or non-lactating employees, and unlawfully terminating Ms. Harkins' employment, or alternatively constructively terminating Ms. Harkins' employment.

234.    Defendant targeted Ms. Harkins because she was lactating and because of her known limitations related to her post-pregnancy conditions. No similarly situated male or non-lactating employees endured the discriminatory conduct that Ms. Harkins was forced to endure.

235.    The discriminatory actions of the Defendant against Ms. Harkins, as described and set forth above, constitute an adverse employment action for the purposes of the PWFA.  In

34

subjecting Ms. Harkins to an adverse employment action, the Defendant intentionally discriminated against Ms. Harkins with respect to the compensation, terms, conditions, or privileges of her employment.

236.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the PWFA, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harkins accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

237.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Harkins' rights under the PWFA, warranting the imposition of punitive damages, in addition to compensatory damages.

238.    The conduct of the Defendant deprived Ms. Harkins of her statutory rights guaranteed under the PWFA.

239.    Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

**<u>COUNT XI</u>**
**42 U.S.C. § 2000gg-2(f)**
*PWFA Retaliation*

240.    Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

241.    The PWFA prohibits retaliation in any manner against a person who has opposed an unlawful discriminatory practice or act, or who has participated in any investigation, proceeding, or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000gg-2(f)(1).

242.     The PWFA further prohibits an employer from coercing, intimidating, threatening, or interfering with any individual's exercise of any protected rights, or on account of any individual having exercised any protected rights. 42 U.S.C. § 2000gg-2(f)(2).

243.     Ms. Harkins had known limitations related to her pregnancy-related medical conditions, and was therefore protected under the PWFA.

244.     Ms. Harkins engaged in a protected activity under the PWFA when she informed Defendant of known limitations due to her pregnancy, requested reasonable accommodations from Defendant on account of her known limitations, and when she opposed Defendant's unlawful conduct in violation of the PWFA.

245.     In response to Ms. Harkins asserting her protected rights under the PWFA, the Defendant retaliated against Ms. Harkins.

246.     Defendant retaliated against Ms. Harkins and interfered with Ms. Harkins' rights by engaging in conduct, including but not limited to, denying Ms. Harkins the terms and conditions of employment afforded to other male or non-lactating employees, and unlawfully terminating Ms. Harkins' employment, or alternatively constructively terminating Ms. Harkins' employment.

247.     Defendant took the above-mentioned materially adverse actions, among others, against Ms. Harkins because of her protected activities.

248.     Any reasonable employee in Ms. Harkins' position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Harkins was forced to endure.

249.     Defendant's alleged bases for its adverse employment actions against Ms. Harkins are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

250.     As a direct and proximate result of the Defendant's retaliatory conduct in violation of the PWFA, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harkins accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

251.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harkins' rights under the PWFA, warranting the imposition of punitive damages in addition to compensatory damages.

252.     The conduct of the Defendant deprived Ms. Harkins of her statutory rights guaranteed under the PWFA.

253.     Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT XII
### 29 U.S.C. § 218d
### PUMP ACT VIOLATION

254.     Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

255.     Defendant was Ms. Harkins' employer for purposes of the PUMP Act, as the term "employer" is defined by 29 U.S.C. § 203(d).

256.     Under 29 U.S.C § 218d(a)(2), an employer shall provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk."

257.     Following Ms. Harkins' return from maternity leave, Defendant assigned Ms. Harkins to pump in a storage room that was not shielded from view or free from intrusion from coworkers and the public.

258.     Defendant unlawfully assigned Ms. Harkins to pump in the storage room up to three (3) times each and every shift following her return to work from maternity leave.

259.     Although Defendant's assigned pump space was not a bathroom, the pump space was riddled with mold, paint cans, sewer pipes, trash, kitchen equipment, an electrical board, bugs, and dead cockroaches.

260.     Ultimately, Defendant's designated pump space was substanitally less sanitary than Defendant's bathrooms.

261.     Ms. Harkins repeatedly notified Defendant of the inhumane conditions of her designated pump space, but they disregarded her complaints and failed to provide her a shielded space that was free from intrusion.

262.     Ms. Harkins also notified Defendant on at least five (5) occasions that her colleagues, managers, and coworkers entered the space while she was pumping, half nude, exposed and vulnerable.

263.     Defendant was aware of Ms. Harkins complaints with the pump space a minimum of four (4) months yet never took corrective action.

264.     As a direct and proximate result of the Defendant's retaliatory conduct in violation of the PUMP Act, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Harkins accordingly demands lost economic damages, lost wages, back

pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

265.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harkins' rights under the PUMP Act, warranting the imposition of punitive damages.

266.    Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XIII**
**29 U.S.C. § 215(a)(3)**
**PUMP ACT RETALIATION**

267.    Ms. Harkins reincorporates the factual allegations in Paragraphs 24 through 99.

268.    Defendant was Ms. Harkins' employer for purposes of the PUMP Act, as the term "employer" is defined by 29 U.S.C. § 203(d).

269.    Under 29 U.S.C. § 215(a)(3), it is unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceed under of related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

270.    Ms. Harkins engaged in a protected activity when she repeatedly complained about the unlawful pump space conditions Defendant provided to her, that the pump space was (1) not functional for pumping, (2) not shielded from view, and (3) not free from intrusion. Ms. Harkins further engaged in a protected activity when she discussed with her managers on at least five (5) occasions that Defendant's employees would walk in on her while she was pumping, half naked, exposed and vulnerable.

271.    In response to Ms. Harkins asserting her right to enjoy the same employment benefits as every other employee, Defendant retaliated against Ms. Harkins.

272.    Defendant retaliated against Ms. Harkins and interfered with Ms. Harkins' rights by engaging in conduct, including but not limited to, denying Ms. Harkins the terms and conditions of employment afforded to other male or non-lactating employees, and unlawfully terminating Ms. Harkins' employment, or alternatively constructively terminating Ms. Harkins' employment.

273.    Defendant took the above-mentioned materially adverse actions, among others, against Ms. Harkins because of her protected activities.

274.    Defendant's retaliatory actions were causally connected to Ms. Harkins' protected activities.

275.    Any reasonable employee in Ms. Harkins' position would be dissuaded from opposing unlawful pay practices if they knew that they would be subjected to the kind of treatment that Ms. Harkins was forced to endure.

276.    Defendant's alleged basis for its adverse employment actions against Ms. Harkins are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

277.    As a direct and proximate result of the Defendant's retaliatory conduct in violation of the PUMP Act, Ms. Harkins has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harkins has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Harkins accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

278.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harkins' rights under the PUMP Act, warranting the imposition of punitive damages in addition to compensatory damages

279.    Ms. Harkins further requests that her attorney's fees and costs be awarded as permitted by law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request this Court enter judgment against the Defendant for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation of Title VII, the FCRA, the MDHRO, the PWFA, and the PUMP Act.

### JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues.

Dated the 2nd day of October, 2024.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Danielb@dereksmithlaw.com