UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DANIELLE HARKINS,

    Plaintiff,                                 CASE NO.: 24-23800-CIV-FAM

v.

HILLSTONE RESTAURANT GROUP, INC.,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND PARTIAL MOTION TO DISMISS**

Plaintiff, DANIELLE HARKINS, by and through her undersigned counsel, hereby files her Response in Opposition to Defendant's Motion to Compel Arbitration and Motion to Dismiss ("Defendant's Motion"), and in support states as follows:

**INTRODUCTION**

Defendant's Motion unconvincingly asks this Court to compel the Plaintiff to arbitrate her claims against the Defendant on the basis of an unenforceable arbitration agreement, and to dismiss Counts II, V, and VII of her Complaint.[1] Contrary to Defendant's position, Plaintiff has indeed established sufficient factual allegations to put Defendant on adequate notice of each of the claims against them and the grounds upon which they rest, pursuant to 42 U.S.C. § 2000e ("Title VII"), the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg ("PWFA"), the Providing Urgent Maternal Protections for Nursing Mothers Act, 29 U.S.C § 218d ("PUMP" and/or "PUMP Act"); the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes ("FCRA"); and the Miami-Dade

---

[1] Plaintiff notes that although Defendant repeatedly states it seeks to dismiss Count VII of Plaintiff's Complaint, Defendant makes no reference to Count VII, MDHRO Sex Discrimination. Plaintiff understands that Defendant's Motion, in fact, seeks to dismiss Counts II, V, and **VIII**, all of which are claims for Hostile Work Environment.

1

County Human Rights Ordinance, Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A ("MDHRO"). *See* D.E. 1. Plaintiff further opposes Defendant's Motion as the purported agreement is rendered unenforceable under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021. For these and other reasons, Plaintiff respectfully requests that Defendant's Motion be denied in its entirety.

## **STANDARD OF LAW**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. See *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lopez v. First Union Nat'l Bank*, 129 F.3d 1186, 1189 (11th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)).

A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

As with Ms. Harkins' case, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

2

unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. See *Twombly*, 550 U.S. at 555.

"Yet, where the allegations 'possess enough heft' to suggest a plausible entitlement to relief, the case may proceed." *Morford v. Cattelan*, 2022 WL 2466775 (S.D. Fla. 2022) (citing *Twombly*, 550 U.S. at 557). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

"Under Iqbal and Twombly, then, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against [her] and (2) [her] [protected class] was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 2015 WL 5127519 at *11 (2d Cir. Sept. 2, 2015). In determining whether the complaint states a plausible discrimination case, a "court must be mindful of the 'elusive' nature of intentional discrimination… [a]s we have recognized, 'clever men may easily conceal their motivations.'" *Id*. (citing *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1043 (2d. Cir. 1979)).

In light of these established legal standards, Plaintiff requests the Court deny Defendant's Motion to Dismiss.

## **LEGAL ARGUMENT**

### I. **Defendant Improperly Applies the Eleventh Circuit's Standards for Sexual Harassment**

Plaintiff will prevail in her hostile work environment claims as she has successfully pleaded each and every element of her hostile work environment claim. To establish a prima facie case of hostile work environment, "a plaintiff must show that: (1) [s]he belongs to a protected group; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the 'harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;' and (5) [defendant] is directly or vicariously liable for the environment." *Cooley v. City of Oakland*, 2022 U.S. Dist. LEXIS 158319 at *7-8 (S.D. Fla. 2022) (citing *Singleton v. Auburn Univ. Montgomery*, 520 Fed. Appx. 844, 847 (11th Cir. 2013). Defendant improperly cites *Dobb v. City of Roswell, Georgia*, by highlighting a secondary portion of the hostile work environment analysis rather than the five (5) elements. *See* D.E. 5 at 8.

Defendant does not dispute that Plaintiff has adequately alleged the first, second, third, and fifth element and only challenges the sufficiency of the fourth element of Plaintiff's hostile work environment claim. *See* D.E. 5 at p. 10 ("This Court should dismiss Plaintiff's purported hostile work environment sexual harassment claim because she has failed to sufficiently plead that Defendant's conduct was sufficiently severe or pervasive to meet the legal standard."). As such, Plaintiff will direct the Court's attention to an analysis of the aforementioned fourth factor.

There can be no doubt that Plaintiff subjectively perceived Defendant's behavior as harassing.[2] To determine the objective severity of the harassment under the fourth element, courts

---

[2] "Defendant's sexual harassment and discrimination was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive." *See* D.E. 1 at ¶¶118, 160, 200.

have looked to the totality of the circumstances including: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798 at 808 (11th Cir. 2010); see *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 at 21). "Either severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Reeves*, 594 F.3d at 808. Under the fourth element, "to be sufficiently 'severe or pervasive,' the employer's actions 'must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]… to be abusive.'" *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 837 (11th Cir. 2021) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 169 at 1276 (11th Cir 2002)).

    **i)**     **Frequency of the Conduct**

Plaintiff established in her Complaint that Defendant sexual harassed her on five (5) separate occasions between September 21, 2023, and early November of 2023. *See* D.E. 1 at ¶¶54, 68. To be clear, Defendant sexually harassed Plaintiff approximately once every eight (8) days during this period of time. In *Manganiello v. Town of Jupiter Inlet Colony*, the Court considered "the frequency factor as weighing in favor of Plaintiff's claim," where the Plaintiff alleged the Defendant's harassing conduct occurred, "once a week during the eight months he was in town," "between ten and 20 times from 2006 to 2011," and on several other isolated incidents. *Manganiello v. Town of Jupiter Inlet Colony*, 2013 U.S. Dist LEXIS 175938 at *17-18 (S.D. Fla. 2013). In this case, the frequency of Defendant's harassing conduct is similar to that in *Manganiello*, and therefore the first factor must weigh in Plaintiff's favor.

5

### ii) <u>**Severity of the Conduct**</u>

Plaintiff has successfully established that Defendant's harassment was severe. The Southern District of Florida has regularly ruled that Defendant's conduct satisfies the objectively severe standard where the conduct includes inappropriate sexual activity or comments from a male co-worker to a female Plaintiff. *Manganiello*, 2013 U.S. Dist. LEXIS 175938 at *27-30 (citing *Dees v. Johnson Controls World Serv.*, 168 F.3d 417 (11th Cir. 1999); *Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501 (11th Cir. 2000); *Husley v. Pride Rests., LLC*, 367 F.3d 1238 (11th Cir. 2004)). In *Johnson*, the Court considered inappropriate sexual activity, including where the Plaintiff's male co-worker stood so close to the her that his body parts touched her from behind, before determining the Defendant's harassment was severe. *Johnson*, 234 F.3d 501 at 509. In *Husley*, the Court highlighted the male co-worker's action of following Plaintiff into a stall in the women's restroom before determining the harassment in question was sufficiently severe. *Husley*, 367 F.3d at 1241.

In this case, Defendant's inappropriate sexual activity resembles that seen in *Johnson* and *Husley*. Defendant's sexual harassment occurred while Plaintiff was nude, exposed, and vulnerable. *See* D.E. 1 at ¶262. As alleged in Plaintiff's Complaint, Defendant's employees repeatedly barged into Plaintiff's designated pump space while she was expressing milk for her newborn daughter, as she was seated on the dirty floor, surrounded by trash, mold, and dead bugs. *Id.* at ¶¶36—44. Plaintiff's conditions must be considered as they highlight her fragility when being sexually harassed.

During Defendant's most egregious act of sexual harassment, Plaintiff's male co-worker snuck up on her while she was nude and expressing milk, crept up to within one foot of her, stood right behind her, watched her express milk, stared at her breasts, ignored her screams and desperate

6

pleas for him to leave, and did not look away as she squirmed to get back into her clothing. *Id*. at ¶¶70—74. This is a traumatic series of events that Plaintiff replays in her head, and caused her an inability to produce milk for her newborn daughter, anxiety, depressive mood, among others. As alleged, Defendant's conduct is undoubtedly severe, and this factor remains in favor of the Plaintiff.

### iii) **Whether the Conduct is Physically Threatening or Humiliating**

The third factor clearly falls in favor of the Plaintiff. As alleged, "[Plaintiff]'s discomfort grew with each passing second as she became more frightened and fearful for what might happen to her." *See* D.E. 1 at ¶73. Further, Defendant repeatedly humiliated Plaintiff: "Defendant additionally sexually harassed and humiliated [Plaintiff] by directing its employees to enter the pump space while [Plaintiff] was pumping, and her breasts were exposed"; "Again, [Plaintiff] was extremely humiliated and embarrassed, and grew frustrated that Defendant was not providing her any privacy"; "Laurie [Last Name Unknown], employed by Defendant, walked into the pump space while [Plaintiff] was bare and exposed, again humiliating and embarrassing [Plaintiff]"; and "Roseman ultimately left the room, however his presence came at the expense of [Plaintiff] being embarrassed and humiliated." *Id*. at ¶¶ 32, 58, 60, 64. The third factor is overwhelmingly in favor of the Plaintiff as she alleged that Defendant not only physically threatened her, but repeatedly humiliated her.

### iv) **Whether the Conduct Unreasonably Interferes with the Job Performance**

With regard to the final prong, there is no doubt that Defendant's harassing conduct unreasonably interfered with Plaintiff's job performance. Defendant's Motion naively states that Defendant's conduct did not interfere with her job performance simply because she alleged she was an exemplary employee with a record of positive performance. *See* D.E. 5 at p. 10. What

Defendant importantly ignores is the Supreme Court's longstanding precedent that an "abusive work environment can 'detract from an employee's job performance, discourage employees from remaining on the job, or keep them from advancing their careers.'" *Manganiello*, 2013 U.S. Dist. LEXIS 175938 at *33 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17 at 22 (1993)).

As stated in Plaintiff's Complaint, "Defendant made the conditions so onerous, abusive, and intolerable for [Plaintiff] that no woman in [Plaintiff's] shoes would have been expected to continue working, such that [Plaintiff's] choice to resign was void of choice or free will… [Plaintiff] could not endure the immense anxiety, stress, and humiliation associated with working for Defendant…" *See* D.E. 1 at ¶86. Further, Plaintiff stated that she "had become so anxious to pump that she lost the ability to produce milk for her newborn daughter altogether." *Id*. at ¶87.

Because Plaintiff needed to pump at minimum one (1) time per shift, Defendant's conduct absolutely interfered with her job performance. Plaintiff's anxiety, stress, and humiliation persisted during her shifts with Defendant, and therefore her job performance was detrimentally impacted. As a result, the fourth and final factor is in favor of the Plaintiff. In totality, these four factors clearly conclude that Defendant's conduct satisfies the fourth element of her Hostile Work Environment claim.

Based on these facts, it is evident that Plaintiff has fulfilled her burden of establishing this prima facie case as to Defendant's harassment.

## II. Defendant's Arbitration Agreement is Unenforceable Under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021

### i) Plaintiff's Claims Are Covered by the EFAA

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 was signed into law on March 3, 2022. Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. § 402) (the "EFAA"). The EFAA specifically states,

>"Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a).

The EFAA also states that "[a]n issue as to whether this chapter applies with respect to a dispute shall be determined under Federal law." 9 U.S.C. § 402(b). The EFAA has been interpreted by federal courts to be applicable to any dispute or claim that arises after March 3, 2022. *See, e.g.*, *Famuyide v. Chipotle Mexican Grill, Inc.*, 2023 WL 5651915 at *3 (D. Minn. Aug. 31, 2023) (citing Pub. L. 117-90, § 3). In analyzing the EFAA, the Southern District of Florida has interpreted a plaintiff's "claim" to accrue on the date of their termination and a plaintiff's "dispute" to arise when a charge of discrimination is filed against their employer. *See Hodgin v. Intensive Care Consortium, Inc.*, No. 22-81733-CV, 2023 WL 2751443 at *2 (S.D. Fla. Mar. 31, 2023) ("Plaintiff's dispute arose when she filed Charges of Discrimination against her employer with the EEOC").

Here, the Plaintiff's Charge of Discrimination was filed with the EEOC on December 19, 2023. As a result, each of Plaintiff's claims fall within the statute's applicable time period and is rendered unenforceable at the election of the Plaintiff as they relate to her sexual harassment dispute. Defendants' Motion provides no authority to the contrary, and in fact, merely relies on its attempt to dismiss Plaintiff's claims for sexual harassment to deem the EFAA non-applicable. As Plaintiff has successfully pleaded her claims for sexual harassment, the Plaintiff is not bound by

9

the purported arbitration agreement and the Defendants' Motion to Compel Arbitration must be denied.

### ii) *Joena Bartolini Mitchell v. Raymond James and Associates*

Defendant cites *Joena Bartolini Mitchell v. Raymond James and Associates* to support its position that Plaintiff's arbitration agreement must be enforced. *See* D.E. 5 at p. 5-6. Importantly, the facts and proceedings in this case are entirely different from those in *Mitchell*. The Plaintiff in *Mitchell* alleged numerous acts of sexual harassment which occurred many years before March 3, 2022, the date in which the EFAA was signed into law. See *Mitchell v. Raymond James & Assocs., Inc.*, 2024 U.S. Dist. LEXIS 151960 at *18 (M.D. Fla. 2024). The Court in *Mitchell* highlighted that sexual harassment claims prior to March 3, 2022, are not covered by the EFAA, and noted that "all but one alleged act of sexual harassment supporting the plaintiff's sexual harassment claim occurred before March 3, 2022…" *Id*. The Court continued to explain that "the plaintiff concedes that this one incident is insufficient to state a plausible sexual harassment claim." *Id*. at 18-19. Because the Plaintiff in *Mitchell* conceded that her only sexual harassment claim post-March 3, 2022, was insufficient and did not state a plausible claim, the Court decided the EFAA was not applicable. *See id.*

In this case, Defendant sexually harassed Plaintiff in September of 2023 through November of 2023, which falls within the covered timeframe for the EFAA to take effect. Moreso, Plaintiff remains confident in her position that the alleged sexual harassment is sufficient to state a plausible sexual harassment claim. As a result, Defendant fails to explain why the holding in *Mitchell* should be replicated in this case. In fact, the *Mitchell* ruling explains that "the district courts that have considered this issue unanimously agree that the EFAA applies only when the plaintiff states a plausible claim of sexual harassment, which requires that the claim be capable of surviving a Rule

12(b)(6) motion. *Id*. at *14. Because Plaintiff has stated a plausible claim of sexual harassment capable of surviving a Rule 12(b)(6) motion, the Court must deem the EFAA applicable to Plaintiff's claims and deny Defendant's Motion to Compel Arbitration.

## CONCLUSION

Defendant's Motion disregards the EFAA's enforceability and the Plaintiff's well-pled factual allegations, and urges this Court to prematurely dismiss the Plaintiff's claims before the Parties have engaged in discovery. For these reasons, Plaintiff respectfully requests that the Defendant's Motion be denied in its entirety.[3]

**WHEREFORE**, Plaintiff respectfully requests this Court enter an Order denying the Defendant's Motion to Compel Arbitration and Partial Motion to Dismiss.

Dated:  Miami, Florida
        November 7, 2024

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Danielb@dereksmithlaw.com

---

[3] In the event the Court finds that dismissal is warranted, Plaintiff respectfully requests that she be granted leave to amend her Complaint. Where a defect can be cured by an amendment, leave to amend should be freely granted. *Forman v. Davis*, 371. *See also Corbett v. Transportation Sec. Admin*., 968 F. Supp. 2d 1171 (S.D. Fla. 2012) (11th Cir. 2014) (holding that the Courts shall only deny the opportunity to amend a complaint "1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.").

11

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on November 7, 2024, on all counsel of record on the service list below via the Court's CM/ECF system.

By: */s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.

## SERVICE LIST

**FORDHARRISON LLP**
Ena T. Diaz, Esq.
ediaz@fordharrison.com
Florida Bar No.: 0090999
One S.E. 3rd Avenue, Suite 2130
Miami, Florida 33131
Telephone: (305) 808-2113
Facsimile: (305) 808-2101

*Attorneys for Defendant*