UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 24-23800-CIV-MORENO

DANIELLE HARKINS,

        Plaintiff,

vs.

HILLSTONE RESTAURANT GROUP, INC,

        Defendant.

_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND MOTION TO COMPEL ARBITRATION

THIS CAUSE came before the Court upon Defendant's Motion to Compel Arbitration and Motion to Dismiss Counts II, V, and VIII of Plaintiff's Complaint. This thirteen-count Complaint is a civil rights action on behalf of Plaintiff Danielle Harkins, who alleges her rights were violated when she was sexually harassed and unlawfully discriminated and retaliated against by her employer, Defendant Hillstone Restaurant Group Inc., on the basis of her sex and pregnancy upon returning from maternity leave. She brings this action for money damages pursuant to 42 U.S.C. § 2000e, 42 U.S.C. § 2000gg, 29 U.S.C. § 218d, the Florida Civil Rights Act of 1992, and the Miami-Dade County Human Rights Ordinance. The Court dismisses Counts II and V without prejudice because Ms. Harkins has failed to meet the high bar set by the Eleventh Circuit for plausibly pleading a sexual harassment claim. The Court further declines to exercise supplemental jurisdiction over the remaining state law claim, Count VIII. Finally, the parties are compelled to proceed with arbitration pursuant to the arbitration agreement on the remaining Counts.

## I. FACTUAL BACKGROUND

The relevant facts, construed as they must be, in favor of Ms. Harkins, are these. Ms. Harkins is a former employee of Defendant Hillstone Restaurant Group, Inc. She had been employed by Defendant for approximately 4.5 years and describes herself as an exemplary employee with a record of positive performance. During her time there, she worked as a server/bartender.

Ms. Harkins entered into an arbitration agreement with Defendant on August 7, 2019. It provides, as pertinent here, that:

> [t]he "Claims" covered by this Agreement include, but are not limited to, all past, present, future claims, including any pending litigation, for . . . discrimination or harassment based on sex, pregnancy . . . retaliation; violation of any federal, state, or other governmental constitution, statute, ordinance or regulation (as originally enacted and as amended) . . . .

*See* D.E. 5-1, ¶4. Ms. Harkins does not dispute that she entered into this agreement with the Defendant. She states that, during her employment with Defendant, after returning from maternity leave, she was subjected to discriminatory treatment and retaliation on the basis of her sex and pregnancy.

Specifically, she alleges that she was forced to express (or pump) breast milk in a public and unsanitary space ("pump space") that was not functional for pumping. Further, she claims that she was denied reasonable accommodations such as a chair or table to use while expressing breast milk. Ms. Harkins also claims that she was sexually harassed and humiliated by Defendant directing its employees to enter the pump space to grab restaurant equipment while her breasts were exposed because Defendant simultaneously used the room for storing such equipment. She details several instances of her privacy being violated while pumping. In one instance, a manager walked into the pump space, "immediately understood he was somewhere he should not have been,

2

apologized, and exited the room." D.E. 1, ¶54. After complaining of the intrusion, she states that a maintenance technician walked into the space as she was getting dressed. Another female employee entered the space and explained that she had been instructed to enter and grab a water pitcher. On another occasion, a kitchen staff member walked into the space. Finally, a dishwasher who did not speak English entered the space, and remained there for "only three to four minutes" until he understood that Ms. Harkins was asking him to leave. D.E. 1, ¶¶69-74.

Ms. Harkins claims that she filed five official reports with management personnel regarding colleagues walking in on her while pumping. The Defendant's initial solution included giving Ms. Harkins a firewood holder to place in front of the door while she was pumping, but Ms. Harkins states that this did not deter or prevent employees from entering the pump space. Ms. Harkins then asked for a meeting between herself, her floor manager, and her culinary manager to speak about further solutions. Ms. Harkin's culinary manager responded that he was unaware she was in that space when he requested individuals to transport restaurant equipment. No further solutions followed this meeting.

In November of 2023, several days after the meeting, Ms. Harkins was informed that Defendant did not believe she had a future with the company. Ms. Harkins states that as a result of being forced to express breast milk in an unsanitary, unshielded, and unaccommodated space, she felt she had no choice but to resign. She claims that she endured immense anxiety, stress, and humiliation, all of which resulted in her losing the ability to produce milk for her newborn daughter. Further, Ms. Harkens alleges that she has suffered and will continue to suffer the loss of income, salary, bonuses, benefits, and other compensation, and has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other

3

non-pecuniary losses. She claims further that she has experienced severe emotional and physical distress as a result of Defendant's conduct.

On or around December 19, 2023, Ms. Harkins timely dual-filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission, the Florida Commission on Human Relations, and the Miami-Dade Commission on Human Rights. The Commission issued Ms. Harkins' Notice of Right to Sue against Defendant on or around September 11, 2024, and Ms. Harkins timely commenced this action within ninety days of receipt of such notice. Further, the Miami-Dade Commission on Huan Rights issued Ms. Harkins' Notice of Right to Sue against Defendant, and Ms. Harkins timely commenced this action.

## II.  CLAIMS

The thirteen counts in this claim are as follows: (I) sex discrimination in violation of Title VII, (II) hostile work environment in violation of Title VII, (III) retaliation in violation of Title VII, (IV) sex discrimination in violation of the Florida Civil Rights Act of 1992, (V) hostile work environment in violation of the Florida Civil Rights Act (VI) retaliation in violation of the Florida Civil Rights Act, (VII) sex discrimination in violation of the Miami-Dade County Human Rights Ordinance, (VIII) hostile work environment in violation of the Miami-Dade County Human Rights Ordinance, (IX) retaliation in violation of Miami-Dade County Human Rights Ordinance, (X) pregnancy discrimination in violation of the Pregnancy Workers Fairness Act, (XI) retaliation in violation of the Pregnancy Workers Fairness Act, (XII) violation of Ms. Harkins' rights under the Providing Urgent Maternal Protections for Nursing Mothers Act, and (XIII) retaliation in violation of the Providing Urgent Maternal Protections for Nursing Mothers Act.

### III. ISSUES

Defendant moves to compel arbitration, to dismiss Ms. Harkin's claims of sexual harassment under Counts II, V, and VIII[1] for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6), to dismiss the action because all claims are subject to arbitration, and to award Defendant attorney's fees and costs associated with the filing of the motion. Defendant argues that the Ending Forced Arbitration of Sexual Assault Act ("the Act") does not invalidate arbitration agreements when a plaintiff fails to state a claim for quid pro quo or hostile work environment sexual harassment that is plausible on its face. Further, Defendant contends that because Ms. Harkins does not plausibly allege a valid claim of sexual harassment, the Act, 9 U.S.C. §§ 401, 402, does not apply. Thus, Defendant posits that Ms. Harkins entered into a valid and enforceable agreement to arbitrate any claims against Defendant arising from her employment.

Ms. Harkins responds that she has successfully plead each and every element of her hostile work environment claim, and thus, the Act renders the arbitration agreement unenforceable. Defendant replies that absent the Act, Ms. Harkins does not dispute the validity or enforceability of the arbitration agreement. As such, Defendant argues that the arbitration agreement should be enforced because her statements fail to meet the standard required to establish a hostile work environment claim for sexual assault.

### IV. LEGAL STANDARD

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir.

---

[1] Defendant repeatedly cites Count VII in their filings. However, Count VII relates to sex discrimination under the Miami Dade County Human Rights Ordinance. Count VIII, however, is a claim for hostile work environment sexual harassment. Accordingly, the Court will refer to Count VIII in this Order, as all of Defendant's arguments relate to sexual harassment as opposed to sex discrimination.

2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal,* 556 U.S. at 679.

## V.  DISCUSSION

Ms. Harkins does not contend that the arbitration agreement itself is invalid, nor that her claims do not fall within the scope of the arbitration agreement. Rather, she argues that under the Act, she is exempt from forced arbitration of her sexual harassment and related retaliation claims. The Defendant disputes that the Act is applicable because her sexual harassment claim is implausible.

### A. Arbitration Agreements and the Ending Forced Arbitration Act

The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1037, 1312 (11th Cir. 2002). "The [Federal Arbitration Act] 'embodies a liberal federal policy favoring arbitration agreements.'" *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (quoting *Weeks*, 291 F.3d at 1313-14). The United States Supreme Court has clarified that the Federal Arbitration Act applies generally to employment contracts, save for those involving "transportation workers."

*Circuit City v. Adams*, 432 U.S. 105, 119 (2001). Thus, the Federal Arbitration Act requires courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). However, this provision may be "overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (citation omitted).

The Federal Arbitration Act was signed into law on March 3, 2022, and provides:

> [n]otwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. 402(a). Under the Act, a "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. 401(4). Courts, rather than arbitrators, determine whether the Act applies to a dispute. 9 U.S.C. 402(b).

As indicated above, the parties dispute whether the Act applies to Ms. Harkin's hostile work environment sexual harassment claims. Specifically, they disagree whether Ms. Harkins has plead a facially plausible sexual harassment claim, rendering the arbitration agreement unenforceable under the Act. The parties do, however, correctly recognize that a plausibility requirement is implicit in the Act. *Mitchell v. Raymond James and Assocs., Inc.*, No. 8:23-CV-2341-VMC-TGW, 2024 WL 4486565, at *6 (M.D. Fla. Aug. 23, 2024), *report and recommendation adopted*, No. 8:23-CV-2341-VMC-TGW, 2024 WL 4263151 (M.D. Fla. Sept. 23, 2024).

Whether the Act applies is intrinsically tied to whether Defendant's Motion to Dismiss Counts II, V, and VIII should be granted. This is because the Act bars enforcement of the

arbitration agreement only if Ms. Harkins has asserted a plausible claim of sexual harassment, which is capable of surviving a Rule 12(b)(6) motion. In other words, if the Court finds that Ms. Harkins' claims do not survive the motion to dismiss, it must also find that the Act is not applicable, and thus must compel arbitration on the remaining claims. *See Yost v. Everyrealm, Inc.*, 657 F.Supp.3d 563, 585 (S.D.N.Y. 2023) (discussing the intersection of the Act and Rule 12(b)(6), and noting that "[i]n enacting a statute that expressly referred to allegations of violations of law, it is reasonable to infer that Congress in 2022 was aware that only viably pled (that is, plausible) allegations of sexual harassment law had the capacity to proceed past the pleading stage in federal court").

## B. Sexual Harassment Under Title VII

Defendant argues that Ms. Harkins' sexual harassment claims are not facially plausible because she attempts to assert her claims with labels and conclusions, not with factual support. Specifically, Defendant posits that Ms. Harkins has failed to show that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of employment. Ms. Harkins responds that under the totality of the circumstances, she has sufficiently plead each and every element of her claims, and thus her claims are covered by the Act, rendering the arbitration agreement unenforceable. Defendant replies that Ms. Harkins' response attempts to bolster her claims by embellishing factual allegations that do not appear in her complaint, all of which, Defendant argues, are unsupported conclusions without any factual or legal basis.

Although Title VII does not explicitly reference sexual harassment, the Supreme Court has recognized a violation when "discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). Thus, the Court must determine whether "the conduct alleged . . . created a hostile work environment that exposed [the

8

plaintiff] to disadvantageous terms or conditions of employment to which members of the other sex were not exposed." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc) (quotation omitted).

### *1. Elements of Hostile Work Environment Sexual Harassment*

To establish a prima facie case of sexual harassment, a plaintiff must establish by a preponderance of the evidence:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Id.* Here, the fourth element – that is, whether the harassment was severe or pervasive – is the only element that Defendant challenges. To prove this element, a plaintiff must identify offensive conduct that is "severe or pervasive enough to alter the terms or conditions of employment." *Id.* at 807. A plaintiff need not demonstrate both severity and pervasiveness, "[e]ither . . . is sufficient to establish a violation of Title VII." *Id.* at 808.

To qualify as severe or pervasive, the work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted). In determining the objective severity of the harassment, courts consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc) (citation omitted). The Court will analyze each factor to

9

determine whether the alleged harassment, as plead by Ms. Harkins, was severe or pervasive enough to survive a 12(b)(6) motion to dismiss.

### *a. Frequency of the Conduct*

Ms. Harkins argues that the Complaint establishes that Defendant sexually harassed her on five separate occasions, approximately once every eight days throughout September 21, 2023 through early November of 2023. She asserts that Defendant's harassing conduct is similar to that in *Manganiello v. Town of Jupiter Inlet Colony*, where the Court found the factor weighed in favor of Plaintiff's claim. 2013 WL 6577377 (S.D. Fla. December 16, 2013). Defendant replies that the frequency of the alleged conduct in *Manganiello* is significantly different from the alleged conduct in this case. Specifically, Defendant argues that in *Manganiello*, the plaintiff was subjected to physical contact accompanied by boorish verbal comments, whereas here, Ms. Harkins never suffered any intentionally offensive conduct.

In *Manganiello*, the plaintiff alleged that she was subjected to touching, hugging, or kissing on the cheek virtually every time she came in contact with the defendant. 2013 WL 6577377, at *5. She also alleged instances where the defendant ran his fingers through her hair, brushed her leg with his knee, and addressed her as "love," "lovely lady," "my dear," and "the lovely madam clerk." *Id.* at *6. Although the plaintiff could not identify an exact number of times the defendant greeted her in an offensive way, the Court, construing the evidence in the light most favorable to the plaintiff, found that this factor weighed in favor of the plaintiff. *Id.* at *7.

Defendant correctly draws the distinction between the alleged conduct in *Manganiello* and the conduct here. In *Manganiello*, the Court weighed this factor in favor of the plaintiff because there was frequent physical contact, and because the defendant did not contest the frequency of the conduct. *Id.* Here, there was no frequent physical contact, nor was there any contact at all.

10

Further, the conduct Ms. Harkins alleges is neither sexual in nature nor was it long lasting or extensive. It would be erroneous for the Court to find that this conduct arises to the high bar set by the Eleventh Circuit. Indeed, as the Eleventh Circuit has noted, "[a]ll of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) (quotation and citation omitted). Five seemingly accidental and non-sexually oriented incidents of coworkers walking into the pump space does not meet this high standard. Accordingly, the Court finds this factor weighs in favor of Defendant. *See Allen v. Ambu-Stat, LLC*, 799 Fed.Appx. 703, 708-09 (11th Cir. 2020) (finding that five isolated comments over a period of four months did not constitute frequent conduct); *Mendoza*, 195 F.3d at 1249 (finding that five instances over an eleventh month period was "far too infrequent to alter the conditions under which [Plaintiff] was required to perform her job); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (11th Cir. 1997) (reasoning that five sexually-oriented incidents over sixteen months were sporadic).

### b. Severity of the Conduct

"The Eleventh Circuit [] has delineated a minimum level of severity necessary for harassing conduct to constitute discrimination, and the bar is quite high." *Id.* By way of example, the Eleventh Circuit found that conduct rose to the level of actionable sexual harassment when a defendant "grabbed or slapped [plaintiff's] buttocks, groped her leg," "ground his groin into [her] pants after stating 'look at that sexy mama, I could just eat you in that skirt,'" and "picked her up and squeezed her so hard that she urinated in her pants." *Dees v. Johnson Controls World Serv., Inc.*, 168 F.3d 417, 418-19 n. 12 (11th Cir. 1999).

11

Here, Ms. Harkins argues that Defendant's inappropriate sexual activity resembles that seen in *Johnson v. Booker T. Washington Broadcasting Serv., Inc.* and *Hulsey v. Pride Restaurants, LLC* because it occurred while Ms. Harkins was nude, exposed, and vulnerable.[2] The Court disagrees. In *Johnson*, the Eleventh Circuit found the Defendant's conduct to be severe when he gave Plaintiff "unwanted massages, [stood] so close to [Plaintiff] that his body parts touched her from behind, and pull[ed] his pants tight to reveal the imprint of his private parts." *Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000). The Eleventh Circuit held in *Hulsey* that the Defendant's conduct was severe when the conduct included "following [plaintiff] into the restroom," repeatedly "attempting to touch her breasts, place his hand down her pants, and pull off her pants," and further "enlisting the assistance of others to hold her while he attempted to grope her." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004).

In her Complaint, Ms. Harkins states that she was subjected to sexual harassment on five separate occasions during a period of about a month and a half. She never asserts that she was physically touched, nor that any of the alleged conduct was accompanied by harassing language. Rather, as Defendant points out, Ms. Harkins alleges that in one instance the disrupting employee "immediately understood he was somewhere he should not have been, apologized, and exited the room," and that on another occasion, an employee did not understand she was asking him to leave because he did not understand English. The other three instances involved (1) a maintenance technician walking into the pump room as she was getting dressed, (2) an employee walking into

---

[2] In her response, Ms. Harkins states that a male co-worker "snuck up on her while she was nude and expressing milk, crept up to within one foot of her, stood right behind her, watched her express milk, stared at her breasts…" D.E. 6 at p. 5. In her Complaint, however, Ms. Harkins does not allege that the man "stared at her breasts," but rather, alleges that he "watched her struggle to get dressed" after "not understand[ing]" that she was asking him to leave. D.E. 1 at ¶¶ 70-72. On a 12(b)(6) motion to dismiss, the Court must look to the factual allegations pleaded in the complaint. Accordingly, the Court will consider Ms. Harkins' version of events that she plead in the Complaint, rather than the additional factual allegations she makes in her response.

the pump space while Ms. Harkins was undressed after the employee was instructed to grab a water pitcher, and (3) an employee entering the pump space, but leaving the room after Ms. Harkins shouted at him.

Construing the alleged facts in a light most favorable to Ms. Harkins, the Court considers the severity of the conduct as weighing in favor of Defendant. Simply put, the conduct Ms. Harkins complains of does not amount to the severity of notable Eleventh Circuit opinions wherein the Court found the alleged conduct was not actionable, let alone those opinions finding sexual harassment described above. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 579, 585-86 (11th Cir. 2000) (holding that defendant putting his hand on plaintiff's thigh, lifting the hem of her dress, unbuckling his pants and pulling down his shirt on separate occasions was *not* objectively severe); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1238, 1252-53 (11th Cir. 1999) (affirming district court's decision to grant defendant's motion for judgment as a matter of law when defendant followed plaintiff around, made sniffing noises, and rubbed his right hip against hers while touching her shoulder because such conduct was *insufficient* to sustain a claim for sexual harassment); *Mitchell v. Pope*, 189 F. App'x 911, 913-14 (11th Cir. 2006) (affirming summary judgment when defendant told plaintiff she could "just walk into the room and [he would] get an erection," showed up on numerous occasions in her driveway, rubbed up against her, chased plaintiff around the office, and once picked her up).

### c. Physically Threatening or Humiliating

The third factor the Court considers is whether the conduct was physically threatening or humiliating. Ms. Harkins does not allege that she was physically threatened. Rather, she argues that Defendant repeatedly humiliated her by directing its employees to enter the pump space while her breasts were exposed. Defendant argues that because Ms. Harkins does not allege any physical

contact or verbal conduct of a sexual nature, her conclusions and subjective feelings fail to meet the third factor of the analysis.

The Eleventh Circuit in *Johnson* found a defendant's conduct to be objectively both physically threatening and humiliating when he gave the plaintiff unwanted massages, stood so close to her that his body parts touched her from behind, and pulled his pants tightly to reveal the imprint of his genitalia. 234 F.3d at 509. In *Hulsey*, the Eleventh Circuit found that following plaintiff into the restroom, repeatedly attempting to touch her breasts, placing his hands down her pants, and pulling off her pants was objectively humiliating and threatening. 367 F.3d at 1248. The alleged conduct in this case falls far too short in comparison to the decisions described above. "In a sexual harassment case the totality of the circumstances must be considered, because context is important." *Id.* Here, the context provided by Ms. Harkins in her Complaint suggests accidental and unfortunate conduct by her coworkers when they entered the pump space while she was exposed. The facts she has plead do not suggest intentional, nefarious, or sexually charged conduct that a reasonable person would find to be objectively humiliating. The Court thus concludes that regardless of Ms. Harkins' subjective feelings, this third factor weighs in favor of Defendant.

### d. Unreasonable Interference with Job Performance

The final factor the Court considers is whether the conduct unreasonably interfered with Ms. Harkins' job performance. Ms. Harkins argues that because she needed to pump at a minimum once per shift, Defendant's conduct interfered with her job performance. She claims that her anxiety, stress, and humiliation persisted during her shifts, and therefore her job performance was detrimentally impacted. Defendant argues that Ms. Harkins alleges in her Complaint that she was an exemplary employee with a record of positive performance, which demonstrates that the alleged harassment did not interfere with her job performance.

When determining whether the alleged conduct unreasonably interfered with an individual's performance at work, the Supreme Court has noted that an "abusive work environment can 'detract from an employee's job performance, discourage employees from remaining on the job, or keep them from advancing their careers." *Harris*, 510 U.S. at 22. In her Complaint, Ms. Harkins stated that "no woman in [her] shoes would have been expected to continue working, such that [her] choice to resign was void of choice or free will." She further claimed that she "had become so anxious to pump that she lost the ability to produce milk for her newborn daughter altogether." However, neither of these statements support a finding that Defendant's conduct unreasonably interfered with her job performance. As for the first statement, Ms. Harkins makes a legal conclusion that a reasonable person would objectively find that they were unable to perform their duties at work. As for the second statement, while unfortunate, Ms. Harkins' inability to produce milk for her newborn did not interfere with her job performance. For example, the Court found in *Johnson* that the plaintiff prevailed on this factor because she was no longer able to get alone with her on-the-air co-host given his outrageous conduct. 234 F.3d at 509. Ms. Harkins makes no such claims here. Accordingly, the Court finds that this final factor weighs in favor of Defendant.

### *2. Conclusion on Hostile Work Environment Sexual Harassment*

The Court must take an objective view as to whether Defendant's conduct results in actionable sexual harassment according to the Eleventh Circuit's standards. Under prevailing precedent in this circuit, Defendant's conduct does not rise to the severity level determined actionable by the cases discussed above. The Court considers the acts "in context, not as isolated acts," and concludes that in their totality, they do not meet the threshold established by the Eleventh Circuit to survive a 12(b)(6) motion to dismiss. The whole of all the conduct Ms. Harkins described

does not amount to a claim for hostile work environment sexual harassment that is plausible on its face. *Twombly*, 550 U.S. 544, 570 (2007). Accordingly, the Court dismisses Count II without prejudice.

**C. Sexual Harassment Under State and County Law**

Ms. Harkins makes two parallel hostile work environment sexual harassment claims. Count V is brought pursuant to § 760.10 (7) of the Florida Civil Rights Act and Count VIII is brought pursuant to § 11A-26(1) of the Miami-Dade County Human Rights Ordinance.

The Florida Civil Rights Act is modeled after Title VII, and thus, claims brought under it are analyzed by federal courts using the same framework discussed above. *Alvarez v. Royal Atl. Devs.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (citing *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998)). Accordingly, Count V does not require a separate discussion – it likewise does not survive a 12(b)(6) motion to dismiss for the reasons the Court explained previously. The Court dismisses Count V without prejudice.

Regarding Count VIII, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Ms. Harkins' claims for hostile work environment sexual harassment under Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A-26(1). "Federal courts have 'supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.'" *Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) (quoting 28 U.S.C. § 1367(a)). But "district courts may decline to exercise supplemental jurisdiction over a claim" for a variety of reasons, including when it "has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). Moreover, § 1367(c)(4) provides that the Court may decline to exercise supplemental jurisdiction over a state claim if "in exceptional

circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

Here, as explained above, the Court is dismissing without prejudice Counts II and V, the federal and state sexual harassment claims. Further, as explained below, Ms. Harkins' remaining claims, save for Count VIII, are arbitrable. Accordingly, the Court exercises its discretion under 28 U.S.C. § 1367(c)(4) to decline supplemental jurisdiction over Count VIII, the remaining state law claim. There is no reason to maintain jurisdiction to adjudicate a related claim based solely on state law over which this Court would not otherwise have subject matter jurisdiction.

## C. Defendant's Motion to Compel Arbitration

Ms. Harkins does not dispute that she entered into a valid and enforceable agreement to arbitrate any claims against Defendant arising from her employment. The Court is dismissing Counts II and V and declining to exercise supplemental jurisdiction over Count VIII – the only claims that could be covered by the Act. *See* 9 U.S.C. § 402(a). Accordingly, the Court compels the parties to proceed with arbitration pursuant to the arbitration agreement on Ms. Harkins' remaining claims – that is, Counts I, III, IV, VI, VII, IX, X, XI, XII, and XIII.

## VI. CONCLUSION

Based on the reasons stated above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Counts II and V are **DISMISSED WITHOUT PREJUDICE.**
2. The Court exercises its discretion under 28 U.S.C. § 1367(c)(4) to decline supplemental jurisdiction over the remaining state law claim, Count VIII.
3. Ms. Harkins has up to and including **February 28, 2025** to file an amended complaint as to Counts II, V, and VIII. Failure to file an amended complaint will result in the dismissal of this action.
4. The parties are **COMPELLED** to proceed with arbitration pursuant to the arbitration agreement on Counts I, III, IV, VI, VII, IX, X, XI, XII, and XIII.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th of February 2025.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record